Per Curiam:
In this case plaintiff sues for tax refunds for each of the calendar years 1952, 1953 and 1954, based upon its right to deduct all of the taxes on its Bridgeport and Fairfield, Connecticut, properties in the year of assessment.
Although the facts in this case differ in some particulars from those in Hackensack Water Company v. United States, 173 Ct. Cl. 606, 352 F. 2d 807 (1965), the basic fact upon which the Hackensack case was decided, to wit, that the taxpayer changed his accounting method without having first secured the consent of the Commissioner of Internal Revenue, is also a fact in this case. We think that the Hackensack decision is controlling in this case.
Plaintiff asks us to reconsider our decision in the Hacken-sack case. We have done so and adhere to the view therein expressed. It results that plaintiff is not entitled to recover and its petition must be dismissed.
All the facts are stipulated. Prior to the tune plaintiff filed its claims for refund, it had deducted part of its taxes on the Bridgeport property in the year of assessment and the balance in the ensuing year. With respect to the Fairfield *972 property, it bad not deducted any of the taxes in the year of assessment, but deducted three-fourths of the taxes in the year following the year of assessment and the balance in the next year. When it filed its claims for refund, it claimed the right to deduct the entire tax on both properties in the year of assessment.
As stated, this was done without having sought and secured the consent of the Commissioner, and for the reasons stated in the Hackensack Water Company case, supra, plaintiff’s claims for refund were properly denied.[1]
FINDINGS OP PACT
The court, having considered the stipulations and the briefs of the parties, makes findings of fact as follows:
1. Docket Nos. 479-61 and 190-62 have been consolidated for purposes of trial, briefing and opinion.
2. Plaintiff is, and at all times hereinafter mentioned was, a corporation organized and existing under and by virtue of the laws of the State of Connecticut. Its principal office and place of business is located at 286 Canfield Avenue, Bridgeport 9, Connecticut.
3. Plaintiff’s Federal income and excess profits tax returns for the calendar years 1950,1951,1952 and 1953, and its Federal income tax returns for the calendar years 1954 and 1955, were filed with the Collector or District Director of Internal Bevenue for Connecticut. Plaintiff’s returns were filed on a calendar year basis. Plaintiff kept its books of account and prepared its returns under the accrual method of accounting.
4. At all times hereinafter mentioned, plaintiff was the owner of real and personal property situated in Bridgeport, Connecticut, and Fairfield, Connecticut. The property was *973 subject to real and personal property taxes of Bridgeport and Fairfield. The assessment date for Bridgeport and Fairfield real and personal property taxes was October 1 of each calendar year. 1 Conn. Gen. Stat. § 1717 (1949). The lien date of the Bridgeport and Fairfield real property tax was October 1 of each calendar year. 1 Conn. Gen. Stat. § 1853 (1949). The General Statutes of Connecticut further provide:
All taxes properly assessed shall become a debt due from the person, persons or corporation against whom they are respectively assessed, to the town, city, district or community in whose favor they are assessed, and may be, in addition to the other remedies provided by law, recovered by any proper action, in the name of the community in whose favor they are assessed.
1 Conn. Gen. Stat. § 1842 (1949).
5. (a) At all times hereinafter mentioned, the annual Bridgeport real and personal property taxes were payable in two installments on April 1 and September 1 following the assessment date. The Bridgeport tax assessment is imposed on property owned on October 1 of a particular year for the city’s fiscal year beginning April 1 following the assessment date in the sense that payments of such tax are received by the city in such fiscal year and the assessment rates are fixed with reference to the city’s fiscal needs based on its budget for such fiscal year.
(b) The annual Fairfield real and personal property taxes were payable in four installments on July 1, October 1, January 1 and April 1, following the assessment date. The Fairfield tax assessment is imposed on property owned on October 1 of a particular year for that town’s fiscal year beginning July 1 following the assessment date in the sense that payments of such tax are received by the town in such fiscal year and the assessment rates are fixed with reference to the town’s fiscal needs based on its budget for such fiscal year.
*974 6. For many years prior to 1950, in determining its income for corporate purposes and for Federal income tax purposes, plaintiff deducted its Bridgeport and Fairfield property taxes as follows:
(a) With respect to Bridgeport property taxes assessed on property owned on October 1 of any particular year, plaintiff debited its expense account at the end of each of the months October through February in an amount substantially equal to one-twelfth of the estimated Bridgeport tax assessment. On March 31, after the tax rates were fixed and the precise amount of the assessment became known, plaintiff debited its expense account in the amount necessary to bring all prior debits up to one-half of the tax assessment. The remaining one-half of the tax assessment was debited to plaintiff’s expense account in substantially equal amounts at the end of each of the months April through September. In determining its income for general corporate and Federal income tax purposes, plaintiff treated as an expense accrued in the year within which the assessment date fell the amounts debited to its expense account as aforesaid in that year, and the balance of the tax assessment was treated as an expense accrued in the ensuing year. -
(b) With respect to Fairfield property taxes assessed on property owned on October 1 of any particular year, plaintiff commenced debiting its expense account at the end of the month of April of the following year in an amount substantially equal to one-twelfth of the estimated tax assessment, and continued to make monthly debits at the end of each month thereafter through the end of March of the next year. The Fairfield tax rates normally became known in May or June following the year in which fell the assessment date, and, when those rates and the precise amount of the assessment became known, plaintiff adjusted its debit at the end of the month of May and/or June so as to cause the total debits to its expense account for the first three months to equal one-quarter of the tax. The remaining three-fourths of the tax assessment was debited to plaintiff’s expense account in substantially equal amounts at the end of each of the months July through March. In determin *975 ing its income for general corporate and Federal income tax purposes, plaintiff treated as an expense accrued in tbe year following the year within which fell the assessment date the amounts debited to its expense account as aforesaid in that following year, and the balance of the tax assessment was treated as an expense accrued in the next ensuing year.
7. For the calendar years 1950 through 1953, plaintiff treated its Bridgeport and Fairfield property taxes as accruing in accordance with the procedure described in finding 6 hereof, both in determining its income for corporate purposes and in its Federal income tax returns. In its Federal income tax returns for the calendar'years 1954 and 1955, plaintiff accrued and claimed a deduction for the Bridgeport and Fairfield property taxes assessed as of (that is, on property owned on) October 1, 1954, and October 1, 1955, respectively. In determining its income for corporate purposes for the calendar years 1954 and 1955, plaintiff continued to follow the procedure described in finding 6 hereof.
The following schedule correctly shows plaintiff’s property tax expense as shown on its books and as deducted in its Federal income tax returns for each of the years in issue:

*976

*977 8. (a) In its Federal income tax return for 1950, plaintiff claimed and was allowed a deduction for property tax expense in the amount of $120,715.31. The same amount was treated as an expense accrued in that year on account of such property taxes in plaintiff’s books of account. As shown in findings 6 and 7 hereof, this deduction consisted of three-fourths of the Bridgeport property taxes assessed as of (that is, on property owned on) October 1,1949, one-fourth of the Bridgeport property taxes assessed as of (that is, on property owned on) October 1,1950, one-fourth of the Fairfield property taxes assessed as of (that is, on property owned on) October 1, 1948, and three-fourths of the Fairfield property taxes assessed as of (that is, on property owned on) October 1,1949.
(b) In its claim for refund for 1950, plaintiff contends that it is entitled to a deduction for property tax expense in the amount of $256,805.77. This claimed deduction consists of the amount computed in finding 8(a) hereof, and in addition, the remaining three-fourths of the Bridgeport property taxes assessed as of (that is, on property owned on) October 1,1950 [$8,462.98], and all of the Fairfield property taxes assessed as of (that is, on property owned on) October 1, 1950 [$127,627.48].
9. (a) In its Federal income tax return for 1951, plaintiff claimed and was allowed a deduction for property tax expense in the amount of $134,983.15. The same amount was treated as an expense accrued in that year on account of such property taxes in plaintiff’s books of account. As shown in findings 6 and 7 hereof, this deduction consisted of three-fourths of the Bridgeport property taxes assessed as of (that is, on property owned on) October 1,1950, one-fourth of the Bridgeport property taxes assessed as of (that is, on property owned on) October 1,1951, one-fourth of the Fairfield property taxes assessed as of (that is, on property owned on) October 1,1949, and three-fourths of the Fairfield property taxes assessed as of (that is, on property owned on) October 1,1950.
*978 (b) In its claim for refund for 1951, plaintiff contends that it is entitled to a deduction for property tax expense in the amount of $215,549.32. This claimed deduction equals the total amount of real and personal property taxes assessed by Bridgeport and Fairfield as of (that is, on property owned on) October 1,1951.
10. (a) In its Federal income tax return for 1952, plaintiff claimed and was allowed a deduction for property tax expense in the amount of $197,515.77. The same amount was treated as an expense accrued in that year on account of such property taxes in plaintiff’s books of account. As shown in findings 6 and 7 hereof, this deduction consisted of three-fourths of the Bridgeport property taxes assessed as of (that is, on property owned on) October 1,1951, one-fourth of the Bridgeport property taxes assessed as of (that is, on property owned on) October 1,1952, one-fourth of the Fairfield property taxes assessed as of (that is, on property owned on) October 1,1950, three-fourths of the Fairfield property taxes assessed as of (that is, on property owned on) October 1, 1951, and Ohio property tax in the amount of $45.08.
(b) In its claims for refund for 1952, plaintiff contends that it is entitled to a deduction for property tax expense in the amount of $304,243.68. This claimed deduction equals the total amount of real and personal property taxes assessed by Bridgeport and Fairfield as of (that is, on property owned on) October 1,1952, and an Ohio property tax in the amount of $45.08.
11. (a) In its Federal income tax return for 1953, plaintiff claimed and was allowed a deduction for property tax expense in the amount of $284,410.67. The same amount was treated as an expense accrued in that year on account of such property taxes in plaintiff’s books of account. As shown in findings 6 and 7 hereof, this deduction consisted of three-fourths of the Bridgeport property taxes assessed as of (that is, on property owned on) October 1,1952, one-fourth of the Bridgeport property taxes assessed as of (that is, on property owned on) October 1,1953, one-fourth of the Fairfield prop *979 erty taxes assessed as of (that is, on property owned on) October 1,1951, three-fourths of the Fairfield property taxes assessed as of (that is, on property owned on) October 1, 1952, a Bridgeport special assessment in the amount of $62.14, and property tax from other cities in the amount of $304.52.
(b) In its claims for refund for 1953, plaintiff contends that it is entitled to a deduction for property tax expense in the amount of $290,934.53. This claimed deduction equals the total amount of real and personal property taxes assessed by Bridgeport and Fairfield as of (that is, on property owned on) October 1, 1953, plus a special assessment by Bridgeport in the amount of $62.14, and property tax from other cities in the amount of $304.52.
12. (a) In its Federal income tax return for 1954, plaintiff claimed a deduction for property tax expense in the amount of $307,115.55. This claimed deduction equals the total amount of real and personal property taxes assessed by Bridgeport and Fairfield as of (that is, on property owned on) October 1, 1954, plus property tax from other cities in the amount of $294.74. In its books of account, plaintiff treated $299,883.70 as an expense accrued in that year on account of such property taxes. As shown in findings 6 and 7 hereof, this amount consisted of three-fourths of the Bridgeport property taxes assessed as of (that is, on property owned on) October 1,1953, one-fourth of the Bridgeport property taxes assessed as of (that is, on property owned on) October 1, 1954, one-fourth of the Fairfield property taxes assessed as of (that is, on property owned on) October 1, 1952, three-fourths of the Fairfield property taxes assessed as of (that is, on property owned on) October 1, 1953, and property tax from other cities in the amount of $294.74.
(b) On audit of plaintiff’s Federal income tax return for 1954, the claimed property tax deduction was disallowed to the extent of $7,231.85 and allowed to the extent of $299,-883.70. In its claim for refund for 1954, plaintiff contends that its property tax deduction for 1954 should have been in the amount of $307,115.55.
*980 13. (a) In its Federal income tax return for 1955, plaintiff claimed a deduction for property tax expense in the amount of $344,512.06. This claimed deduction equals the estimated amount of real and personal property taxes assessed by Bridgeport and Fairfield as of (that is, on property owned on) October 1, 1955, plus property tax from other cities in the amount of $882.42. In its books of account, plaintiff treated $304,277.38 as an expense accrued in that year on account of such property taxes. As shown in findings 6 and 7 hereof, this amount consisted of three-fourths of the Bridgeport property taxes assessed as of (that is, on property owned on) October 1, 1954, one-fourth of the Bridgeport property taxes assessed as of (that is, on property owned on) October 1, 1955, one-fourth of the Fairfield property taxes assessed as of (that is, on property owned on) October 1, 1953, three-fourths of the Fairfield property taxes assessed as of (that is, on property owned on) October 1, 1954, and property tax from other cities in the amount of $882.42.
(b) On audit of plaintiff’s Federal income tax return for 1955, the claimed property tax deduction was disallowed to the extent of $40,234.68, and allowed to the extent of $304,-277.38. In 1955 plaintiff sustained a net operating loss which consequently allowed it a net operating loss carryback to 1953. In so far as pertinent, in computing said net operating loss carryback, plaintiff was allowed a property tax deduction for 1955 in the amount of $304,277.38 (as computed in finding 12(a) hereof). In its claim for refund for 1953, plaintiff contended that its net operating loss carryback deduction for 1953 should be increased in the amount of the disallowed [$40,234.68] property tax deduction for 1955.
14. The composition of the property taxes assessed against plaintiff’s properties by Bridgeport was as follows:

*981

*982 16.Plaintiff timely filed the following claims for refund for the years here in issue, which claims were disallowed by statutory notice on the dates indicated:

Year Date filed Amount Date disallowed

1950_June 28, 1955_$77, 739. 34 December 29,1959
1951_March 14, 1955_ 54, 784. 99 December 29,1959
1952_June 30, 1955_ 74, 709.55 June 10, 1960
1952_December 27, 1961_ 33,918. 91 April 3, 1962
1953_June 30, 1955_ 4,566. 70 June 10, 1960
1953_December 27, 1961_ 30, 999.29 April 3,1962
1*954_January 22,1962- 4,945.13 April 3, 1962
17. In none of the years in issue did plaintiff submit to the Commissioner of Internal Revenue a statement of election under Section 461(c) (1) of the Internal Revenue Code of 1954, or a written request for permission to make such an election, as provided in Section 1.461-1 (c) (3) of the Income Tax Regulations.
In none of the years in issue did plaintiff request or obtain the consent of the Commissioner of Internal Revenue to a change in plaintiff’s method of accounting as provided in Regulations 111, Section 29.41-2, Regulations 118, Section 39.41-2 (c), and Section 446 (e) of the Internal Revenue Code of 1954. It is the plaintiff’s position that it was not necessary either to request or to obtain the consent of the Commissioner under the aforementioned statutory and regulatory provisions.
18. There has been no assignment or transfer of the plaintiff’s claims for refund, or any part thereof or interest therein.
CONCLUSION OP LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover, and the petition is dismissed.

 In addition to tie cases cited in Hackensack Water Company v. United States, 173 Ct. Cl. 606, 352 P. 2d 807 (1965), Folding that it was necessary for a taxpayer to secure the consent of the Commissioner to change its accounting method or its method of treating an individual item of income or expense, see also Broida, Stone & Thomas, Inc. v. United States, 204 F. Supp. 841 (N.D. W.Va.), aff'd per curiam, 309 P. 2d 486 (4th Cir. 1962).